IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHARLES ALBERT REED, | CASE NO. 5:25-CV-00228-BMB |
| Petitioner, | JUDGE BRIDGET MEEHAN BRENNAN |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| ACTING WARDEN STEPHEN REYNOLDS,[1] | **REPORT AND RECOMMENDATION** |
| Respondent. | |

## INTRODUCTION

Representing himself, Petitioner Charles Reed, a prisoner in state custody, seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). The District Court has jurisdiction under § 2254(a) and the matter is referred to me to prepare a Report and Recommendation. (Non-document entry of Feb. 12, 2025). Respondent Warden Stephen Reynolds, as Acting Warden of the Lake Eire Correctional Institution (hereinafter, the State), filed the Return of Writ with the state court record. (ECF #4). Mr. Reed filed a Traverse. (ECF #6). He also filed a motion asking the Court to take judicial notice of surveillance camera footage and the report and testimony of his expert witness at trial (ECF #5) that I denied (ECF #9).

---

[1] After Mr. Reed filed his petition, Acting Warden Stephen Reynolds replaced Misty Mackey as Warden of the Lake Eire Correctional Institution. *See Lake Erie Correctional Institution (LAECI)*, *Ohio Dept. of Rehab. & Corr.*, http://drc.ohio.gov/about/facilities/lake-erie-correctional (last accessed Nov. 13, 2025). Under Fed. R. Civ. P. 25(d) and Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules), I automatically substitute Acting Warden Reynolds as the proper respondent.

Mr. Reed asserts four grounds for relief challenging his convictions for felonious assault and menacing by stalking. For the reasons below, I recommend the District Court **DISMISS** Grounds One, Two, and Four as procedurally defaulted or, alternatively, as not cognizable; **DISMISS** Ground Three as not cognizable; and **DENY** the petition. I further recommend the District Court **DENY** Mr. Reed a certificate of appealability (COA) on all grounds.

PROCEDURAL HISTORY

**A.      State court factual findings**

The Ohio Court of Appeals, Fifth Appellate District, set forth the facts here. These factual findings are presumed correct unless Mr. Reed rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The Fifth District determined:

> {¶2} In 2017, Appellant moved in across the street from the victim and his wife. One day shortly after moving in, Appellant asked the victim if he could help the victim move a piece of paneling out of the victim's truck. The victim declined the offer, and Appellant seemed offended. Appellant began trying to annoy the victim with his behavior, including barking at the victim's dogs and houseguests, walking up and down the sidewalk clucking like a chicken, mocking the victim's post-surgery limp, mowing his lawn while openly carrying a gun, installing and aiming high-wattage spotlights at the victim's house, and blinding the victim with his car headlights in the morning when the victim attempted to leave for work.

> {¶3} On August 26, 2019, the victim and Appellant engaged in a verbal altercation which turned physical. Appellant suffered injuries to his face which required medical treatment. On several occasions thereafter, Appellant pulled out a gun in the presence of others when the victim was outside. Police were called to the neighborhood multiple times. In June of 2021, following an alleged rock-throwing incident, Appellant told a Stark County Deputy Sheriff he would hate to have to use the new self-defense law.

> {¶4} On May 23, 2022, Appellant and the victim both found themselves at the same gas station in Alliance, Ohio. The victim pulled into the gas station to get a sandwich and a drink for lunch. He saw Appellant's truck parked. The victim walked around the side of the building where he saw Appellant filling water jugs. No words were exchanged, and Appellant immediately pulled out a gun. The victim remained still with his thumbs in his pockets. Appellant shot the victim in the chest.

{¶5} Appellant was indicted by the Stark County Grand Jury with attempted murder, felonious assault and menacing by stalking. Prior to trial, Appellant filed a notice of his intent to claim self-defense. Appellant also filed an expert report of Dr. James Pritchard, which detailed Appellant's significant medical history and advanced the doctor's expert opinion an older person such as Appellant, who has heart disease, would fare far worse than a younger person in an altercation if he sustained a fall. The expert opinion opined Appellant could sustain significant or grave consequences from a verbal and/or physical assault, especially if the attacker is twenty years younger, taller, heavier, and in better physical condition.

{¶6} The State filed a motion in limine to prohibit Dr. Pritchard from testifying at trial, to exclude Dr. Pritchard's expert report, and to require Appellant to provide additional evidence of a bona fide belief Appellant was entitled to use self-defense in this case. The trial court found Dr. Pritchard's report did not provide knowledge or expertise beyond that of a lay person as a juror, as a lay person is perfectly capable of comprehending older adults who fall or break bones fare far worse than younger adults, and the 78-year-old Appellant could easily sustain grave consequences from an altercation with the younger, heavier victim. The trial court granted the State's motion in part, allowing Dr. Pritchard to testify as to Appellant's significant medical history, but precluding his testimony as to the potential consequences of an altercation between Appellant and the victim and its effect on Appellant's state of mind at the time of the shooting.

{¶7} The case proceeded to jury trial. At trial, Dr. Pritchard testified about Appellant's significant medical history, including prostate cancer, heart disease, lung disease, hypertension, prediabetes, and Agent Orange exposure. Appellant testified at trial he obtained a concealed carry permit following a mass shooting during the Batman movie in Colorado. Appellant testified the victim referred to him as "dick head," while he called the victim "pecker head." Appellant testified he heard the victim had told a deputy sheriff if Appellant ever pulled a gun on the victim, the victim would shove the gun up Appellant's ass. Appellant believed something was going to happen with the victim, and so he began carrying his gun. Appellant said following the physical altercation in 2019, the victim threatened to beat him up again.

{¶8} On the day of the shooting, Appellant testified the victim pulled his vehicle next to Appellant at the gas station, rolled down the window, and said, "Hey, dick head." Appellant was apprehensive, but the victim pulled out of the gas station. Appellant testified the victim then turned around, returned to the gas station, got out of his vehicle, and started walking toward Appellant. Because the victim's thumb was in his pocket, Appellant testified he did not know if he was reaching for a weapon. When Appellant pulled his own pistol out, he said the victim didn't raise his hands or say not to shoot, and Appellant thought the victim was going to assault him. Appellant then shot the victim. Appellant testified his health was not good, and he feared for his life if he went through another beating from the victim.

3

{¶9} While the jury deliberated, Appellant made the following proffer:

> Yeah, this is Jeff Jakmides. I would proffer that if I had been permitted to ask Dr. James Pritchard hypothetical questions, I would have asked him question number one: Given the information you have about Charlie Reed, I would ask you, if—hypothetically if he was yelled at or put in a position of stress, within a reasonable degree of medical certainty, could that be fatal?

> Dr. Pritchard would have answered yes.

> I also wanted to ask Dr. Pritchard a hypothetical question that given the medical conditions of Charlie Reed, within a reasonable degree of medical certainty, could Charlie Reed suffer death as a result of being pushed down?

> He would have answered yes.

> And then finally I would have asked Dr. James Pritchard a hypothetical question that given Charlie Reed's conditions, within a reasonable degree of medical certainty, could he be killed by a blow to any part of his body or any part of his head?

> Dr. Pritchard would have answered that question yes as well.

{¶10} The jury found Appellant not guilty of attempted murder, and guilty of felonious assault and menacing by stalking. The trial court sentenced Appellant to a term of six-to-nine years' incarceration for felonious assault, three years' incarceration for the firearm specification, to be served consecutively to the sentence for felonious assault, and eighteen months' incarceration for menacing by stalking, to be served concurrently to the sentence for felonious assault, for an aggregate term of incarceration of nine-to-twelve years.

(ECF #4-1 at PageID 280-81 (citations omitted); *see also State v. Reed*, No. 2023-CA-33, 2023 WL

8869189, at *1-2 (Ohio Ct. App. Dec. 21, 2023), *appeal not allowed*, 230 N.E.3d 1210 (Ohio 2024)

(table)).

4

B.    **Direct appeal**

Through counsel, Mr. Reed timely appealed his convictions to the Fifth District. (ECF #4-1

at PageID 186). There, he raised one assignment of error:

> The trial court erred in precluding Defendant's expert from testifying regarding the
> possibility that relatively minor confrontations could prove fatal to the Defendant
> due to his failing health. To establish self-defense, Defendant was required to show
> a belief that he was in imminent danger of death or great bodily harm and that such
> belief was objectively reasonable under the circumstances. Dr. Pritchard's testimony
> regarding Defendant's medical history and physical condition was offered to
> demonstrate that his belief was objectively reasonable, and by precluding Dr.
> Pritchard from drawing that connection the Trial Court improperly excluded
> evidence critical to the Defendant's case.

(*See id.* at PageID 196) (cleaned up). On December 21, 2023, the Fifth District affirmed. (*See id.* at

PageID 294; *see also Reed*, 2023 WL 8869189).

On January 16, 2024, through counsel, Mr. Reed timely appealed to the Supreme Court of

Ohio. (*Id.* at PageID 295). There, he advanced one proposition of law:

> A trial court must allow a jury to consider all relevant evidence bearing on a
> Defendant's claim of self-defense. This includes expert opinion on the physical state
> of the Defendant and how the extreme frailty of the Defendant affected the
> Defendant's decision to resort to deadly force in self-defense.

(*Id.* at PageID 302). On April 2, 2024, the Supreme Court of Ohio declined to hear his appeal. (*Id.*

at PageID 380; *see also Reed*, 230 N.E.3d 1210).

C.    **State post-conviction relief**

On December 12, 2024, representing himself, Mr. Reed filed a petition for state post-

conviction relief under Ohio Revised Code § 2953.21. (ECF #4-1 at PageID 381-83). There, he

argued he was innocent of the stalking charges because he was the victim of stalking, not the

perpetrator; the State pursued a malicious prosecution by charging an innocent person, distorting

facts, and keeping expert testimony from the jury; and the State did not prove beyond a reasonable

doubt that Mr. Reed did not use force in self-defense. (*See id.*). The trial court denied relief, concluding the petition did not set forth evidence to support his claims, the claims were barred by Ohio's doctrine of res judicata, and the petition was untimely. (*Id.* at PageID 399-401).

## FEDERAL HABEAS PETITION

Mr. Reed raises four propositions of law before this court, which I construe to be grounds for habeas relief:

> **GROUND ONE:** We are arguing that the Petitioner is TOTALLY INNOCENT; this is a case of self-defense. To of indicted and convicted the Petitioner, violated the Petitioners Due Process, Fourth, and Fourteenth Amendment to the U.S Constitution. The petitioner was indicted for a crime where it's right in the records/video where this is a clear case of self-defense. This is a total miscarriage of justice and a malicious prosecution that lead to a chain of Constitutional violations. Which is plain reversible error. The conviction must be overturned on the ground that after a look at the totality of the circumstances, the preponderance of the evidence weighs in favor of self-defense. The Petitioner should have never been indicted.

> **GROUND TWO:** Petitioner is totally innocent of menacing by stalking. It's right in the video where the so called victim, Mr. Nichols stalked the petitioner to the station. Not only stalked the petitioner to the station, but left and returned. Violation of Due Process, Fourth, Sixth and Fourteenth Amendment to the U.S Constitution. The poor discretion of the court was improper, it was egregious, prejudicial and constituted plain reversible error. The conviction must be overturned on the ground that after a look at the totality of the circumstances, the preponderance of the evidence weighs in favor of the alleged victim being the stalker.

> **GROUND THREE:** The trial court erred in precluded Defendants expert from testifying regarding the possibility that relative minor confrontation could prove fatal to the defendant due to his failing health. This was a miscarriage of justice, a violation of Due Process to a fair trial, Fourth, Sixth and Fourteenth Amendment. The poor discretion of the court to not let the petitioner prove self-defense was improper, it was egregious, prejudicial and constituted reversible plain error. The conviction must be overturned on the ground that after a look at the totality of the circumstances, the preponderance of the evidence weighs in favor self-defense.

> **GROUND FOUR:** The Petitioner was charged with a firearm specification when the hand gun was legal. It was registered to the Petitioner and the Petitioner has a C.C.W. The only reason the Petitioner was convicted of the firearms specification is because the Court wouldn't let the Petitioner present testimony critical to prove self-

6

> defense. This was a violation of Due process, Fourth, and Fourteenth Amendments.
> Using the facts and laws above, the firearms specification must be over turned on the
> grounds that after a review of the totality of the circumstances, the preponderance of
> the evidence weighs in favor of innocence.

(ECF #1 at PageID 13, 17, 18, 19-20) (capitalization in original).

STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Reed's habeas petition. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" so AEDPA acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted). Habeas courts review the last-explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991).

Accordingly, habeas relief cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

For the purposes of § 2254(d)(1), "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its

decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to

dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state court's decision is "contrary" to Supreme Court precedent if the state court arrives

at a conclusion opposite that reached by the Supreme Court on a question of law or if the state

court decides a case differently than the Supreme Court has decided on a set of materially

indistinguishable facts. *Id.* at 405. The word "contrary" means "diametrically different, opposite in

character or nature, or mutually opposed." *Id.* A state court does not act contrary to Supreme

Court precedent when the precedent of the Supreme Court is ambiguous or nonexistent. *See*

*Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court's decision involves an "unreasonable application" of Supreme Court

precedent if (1) the state court identifies the correct governing legal rule from the Supreme Court's

cases but unreasonably applies it to the facts of the state prisoner's case or (2) the state court either

unreasonably extends a legal principle from the Supreme Court's precedent to a new context

where it should not be applied or unreasonably refuses to extend that principle in a new context

where it should apply. *Williams*, 529 U.S. at 407. A state-court decision must be "objectively

unreasonable" to have unreasonably applied Supreme Court precedent which requires more than

the decision being "erroneous" or "incorrect." *See id.* at 409-11. "It bears repeating that even a

strong case for relief does not mean the state court's contrary conclusion was unreasonable."

*Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), a state court's factual determinations stand unless they too are

objectively unreasonable in light of the evidence presented in state court. *See Harrington*, 562 U.S.

at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not

8

unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18. Under AEDPA, "a determination of a factual issue made by a state court shall be presumed to be correct" unless the petitioner offers clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2554(e)(1).

Comity principles also require federal courts to defer to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982). Federal courts must accept a state court's interpretation of its statutes and rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

### PROCEDURAL BARRIERS TO FEDERAL HABEAS REVIEW

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome several procedural barriers. These barriers, including the statute of limitations, exhaustion of state remedies and procedural default, limit a petitioner's access to review on the merits of a constitutional claim. *See Daniels v. United States*, 532 U.S. 374, 381 (2001). Put simply,

federal habeas review is limited to federal claims that a state court decided on the merits. Claims that were not evaluated on the merits, either because they were never presented to the state courts (*i.e.*, they are unexhausted) or because they were not properly presented to the state courts (*i.e.*, they are procedurally defaulted), are generally not reviewable by a federal habeas court. *See Bonnell v. Mitchel*, 301 F.Supp.2d 698, 722 (N.D. Ohio Feb. 4, 2004).

**State-law claims not cognizable on federal habeas review**. Federal habeas review is available only for claims that "challenge the legality of [the petitioner's] custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). Put another way, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F.App'x 575, 582 (6th Cir. 2010); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process."); *see also Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but the fundamental elements of fairness in a criminal trial.") (quotation omitted); *see also Engle*, 456 U.S. at 121 n.21 ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted).

Federal habeas review is generally not available to decide whether a state court complied with state law or state procedural requirements. *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). A federal habeas court "does not function as another state appellate court to review a state court's interpretation of its own law or procedure." *Id.* Instead, a federal habeas court is bound by "[a] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

A petitioner cannot justify habeas relief simply by asserting that a state-law error violates the federal constitution. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010). But habeas relief may be available if an error of state law made the criminal process "fundamentally unfair." *Williams*, 460 F.3d at 816. "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (cleaned up). The habeas petitioner must show "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Id.*

**Procedural default.** A federal habeas court may not review claims that have been procedurally defaulted under state law. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). There are two avenues by which a petitioner may procedurally default a claim. *Williams*, 460 F.3d at 806. One way a procedural default occurs is if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* To determine whether that failure bars review of a habeas claim, courts in the Sixth Circuit ask four questions: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to meet that rule; (2) whether the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and independent state ground on which the state can bar review of the federal constitutional claim; and (4) whether the petitioner can show cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

The other way a claim can be procedurally defaulted is if a petitioner does not raise it in state court and pursue it through the state's "ordinary appellate review procedures." *Williams*,

11

460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)). To have a habeas claim considered on the merits, a petitioner must present that federal claim at "each and every level" of the state courts. *See Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D. Ohio 2003). If a petitioner did not first raise his federal habeas claim before the state courts and state law would no longer allow the petitioner to raise the claim in state court, the claim is procedurally defaulted. *Williams*, 460 F.3d at 806.

**Excusing procedural default.** A procedural default is not the end of a habeas claim. A petitioner can overcome a procedural bar by showing either (1) cause for the default and actual prejudice because of the alleged violation of federal law or (2) not considering the claims will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 749. Success here does not entitle a petitioner to habeas relief; it only allows a federal court to consider the merits of a claim (subject to the standard of review above) when the claim would otherwise be procedurally defaulted. *See Martinez v. Ryan*, 566 U.S. 1, 10 (2012); *see also Coleman*, 501 U.S. at 750.

Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Neither a petitioner's pro se status nor any ignorance of the law and procedural filing requirements are enough to show cause to overcome procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

To show prejudice sufficient to overcome procedural default, a petitioner must show more than mere errors in the state trial creating a possibility of prejudice. *Murray*, 477 U.S. at 494.

12

Rather, the petitioner must show the alleged errors worked to the petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. *Id.* There is no prejudice where the petitioner does not show a reasonable probability that the result of the proceeding would have been different. *Ambrose v. Booker*, 801 F.3d 567, 577-78 (6th Cir. 2015).

**Actual innocence exception.** Alternatively, a petitioner may overcome a procedural bar through a convincing claim of actual innocence. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). By such a showing, a petitioner can overcome the end of the statute of limitations, *see id.*, and a procedural default. *See Schlup v. Delo*, 513 U.S. 298 (1995); *House v. Bell*, 547 U.S. 518 (2006). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). As the Sixth Circuit recently summarized,

> This means that a petitioner may not pass through the equitable gateway by simply undermining the state's case. Rather, he must demonstrate that he *factually* did not commit the crime. Of course, dismantling the state's case is *relevant* and *helpful* to the petitioner because it leaves a vacuum to be filled by an exonerative explanation; but it is not sufficient in and of itself.

*Hubbard v. Rewerts*, 98 F.4th 736, 743 (6th Cir. 2024) (emphasis in original), *cert. denied*, 145 S.Ct. 1201 (2025). A valid actual innocence claim must be supported by "new, reliable evidence" that was not presented at trial and is "so strong a court cannot have confidence in the outcome of the petitioner's trial." *Schlup*, 513 U.S. at 324. Such evidence can include exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence. *Id.* But this evidence must show that, "more likely than not[,] any reasonable juror would have reasonable doubt." *House*, 547 U.S. at 538.

ANALYSIS

In the Return of Writ, the State raises only procedural defenses. It argues Grounds One and Two are not cognizable because there is no freestanding habeas claim for actual innocence. (ECF #4 at PageID 95-96). Next, the State argues Ground Three is not cognizable because the evidentiary ruling was not a denial of fundamental fairness. (*Id.* at PageID 96-102). Finally, the State argues Grounds One, Two, and Four are procedurally defaulted because they were not presented to the state courts on direct review. (*Id.* at PageID 107-08). I begin with the issue of procedural default.

**A.     Procedural Default**

The State argues Grounds One, Two, and Four are procedurally defaulted because they were not presented to the state courts on direct review. (*Id.* at PageID 107-08). Mr. Reed responds by citing "Criminal Rule 52(B)" to argue plain errors may be raised when not previously presented to the court (ECF #6 at PageID 1196-97, 1207); he also claims a fundamental miscarriage of justice would occur if the claims are not considered (*id.* at PageID 1207-08).

> **1.     Grounds One, Two, and Four are procedurally defaulted because Mr. Reed did not first raise them in state court in accordance with state procedures.**

Grounds One, Two, and Four are procedurally defaulted. A claim can be procedurally defaulted if a petitioner does not raise it in state court and pursue it through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806. A petitioner must present his federal habeas claim at "each and every level" of the state courts before it may be reviewed on the merits here. *See Baston*, 282 F.Supp.2d at 661. If a petitioner did not first raise his federal habeas claim before the state courts and state law would no longer allow the petitioner to raise the claim in state court, the claim is procedurally defaulted. *Williams*, 460 F.3d at 806.

14

Mr. Reed raised Ground Three on direct appeal by challenging the exclusion of expert testimony. (*See* ECF #4-1 at PageID 196, 302). He did not present his claims asserting his innocence based on self-defense, which comprise Grounds One, Two, and Four on direct appeal. Thus, they are procedurally defaulted.

Mr. Reed argues that "he is making the same claims" that he presented to the state court, "just litigated different." (ECF #1 at PageID 12). However, only Ground Three arguably appears in his direct appeal. It is possible Mr. Reed intended to raise Grounds One, Two and Four in his state post-conviction petition. (*See* ECF #4-1 at PageID 381-83) (arguing among other things that he innocent of stalking and used force only in self-defense). But that petition does not help him because it was procedurally improper. A procedural default occurs if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate state court." *Williams*, 460 F.3d at 806. The state court rejected Mr. Reed's post-conviction petition because it was untimely under the one-year statute of limitations and barred by res judicata. (*See* ECF #4-1 at PageID 399-401; *see also* Ohio Rev. Code § 2953.21(A)(2)(a) (365 days to file a post-conviction petition); *State v. Perry*, 226 N.E.2d 104, 108 (Ohio 1967) (holding claims must be raised on direct appeal if possible or be barred as res judicata)). A procedural default occurs under either procedural bar. *See White v. Warden*, 940 F.3d 270, 275 (6th Cir. 2019) (recognizing Ohio courts' use of Revised Code § 2953.21(A)(2) to bar a claims raised in untimely post-conviction petitions results in procedural default); *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) (holding habeas claims first raised in post-conviction proceedings and barred by Ohio's doctrine of res judicata are procedurally defaulted). Because the petition was untimely and barred by res judicata, the claims Mr. Reed raised there are procedurally defaulted.

15

2.    **There is no exception to procedural default for plain errors.**

Mr. Reed argues that his claimed errors can be reviewed regardless of any procedural default because he raises plain errors and under "Criminal Rule 52," plain errors can be reviewed at any time. (ECF #1 at PageID 12; ECF #6 at PageID 1196, 1207). First, neither the Ohio nor the Federal Rules of Criminal Procedure apply to habeas proceedings. *See* Habeas Rule 12; Fed. R. Civ. P. 81(a)(4) (civil rules apply to habeas proceedings). Moreover, the Supreme Court has expressly rejected creating an exception to procedural default for plain errors as incompatible with the basic role of the writ of habeas corpus. *See Engle v. Isaac*, 456 U.S. 107, 134 (1982) ("Federal habeas challenges to state convictions, however, entail greater finality problems and special comity concerns. We remain convinced that the burden of justifying federal habeas relief for state prisoners is greater than the showing required to establish plain error on direct appeal.") (citations and quotation omitted). Instead, petitioners must either (i) show cause for the default and actual prejudice from the constitutional error (plain or otherwise) or (ii) demonstrate a manifest miscarriage of justice will occur. *See id.*; *see also Coleman*, 501 U.S. at 749.

3.    **Mr. Reed does not show his actual innocence to excuse his procedural default because his self-defense claim goes to legal, not actual, innocence, and he does not otherwise support his arguments with new evidence.**

Mr. Reed argues his procedural defaults should be overlooked because he is actually innocent of menacing by stalking and felonious assault. As discussed above, the actual-innocence exception to procedural default requires the presentation of "new, reliable evidence" that is "so strong a court cannot have confidence in the outcome of the petitioner's trial." *Schlup*, 513 U.S. at 324. Despite this standard, Mr. Reed claims at various points that he does not have to provide new evidence. (*See* ECF #1 at PageID 15 ("In the past, the State has said a Petitioner is required to show new evidence in a total innocence claim. That would not be true in a case where the State

16

fabricated evidence and ignored the law and the Petitioner's constitutional rights."); ECF #6 at

PageID 1201-02 ("Every case I help out with that involves total innocence the state brings up new

evidence. I keep having to explain no new evidence is needed when the evidence is presented but

the court refuses to use it"); *id.* at PageID 1202-03 ("New evidence is not needed in these type of

cases.")). He provides no support for his new interpretation of *Schlup* and the cases he does cite do

not completely summarize *Schlup*'s requirements. (*See, e.g.*, ECF #1 at PageID 15 (discussing *Schlup*

but not its requirement for "new, reliable evidence")). Neither the Supreme Court nor the Sixth

Circuit have articulated the exception Mr. Reed advances. While Mr. Reed is correct that Ohio

statutory law requires the State prove *at trial* that he did not act in self-defense (*See* ECF #6 at

PageID 1199), that statute does not require the State again disprove self-defense *on federal habeas*

*review*. Rather, the petitioner who seeks to overcome a procedural default has the burden of show

his or her actual innocence.

Mr. Reed does not advance new evidence to support his claims of actual innocence and

instead relies on the same evidence presented at trial, namely testimony about the long-standing

feud between Mr. Reed and the victim and Mr. Reed's medical condition (*see, e.g.*, ECF #1 at

PageID 9, 14) to argue self-defense and the surveillance video of the shooting to argue the victim

stalked Mr. Reed (*see, e.g., id.* at PageID 8, 10, 17-18; ECF #6 at PageID 1201, 1204-05). But the

jury saw all this evidence and concluded Mr. Reed was guilty beyond a reasonable doubt. Mr. Reed

does not meet his burden to show "more likely than not[,] any reasonable juror would have

reasonable doubt," *House*, 547 U.S. at 538, by disagreeing with the same evidence that a jury relied

on to convict him.

As the Court must "actively construe" Mr. Reed's pro se petition leniently, *see Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985), the court could construe Mr. Reed's argumentation to advance Dr. Pritchard's expert testimony and report about Mr. Reed's physical state that was excluded at trial as the new evidence. While the Supreme Court has not explicitly defined what evidence counts as "new," the Sixth Circuit has held that evidence is "new" for the purposes of the actual-innocence inquiry so long as it was not presented at trial. *See Souter v. Jones*, 395 F.3d 577, 596 n.9 (6th Cir. 2005) (citing *Schlup*, 513 U.S. at 324). Thus, the court could read Mr. Reed's petition as arguing his innocence to felonious assault based on Dr. Pritchard's testimony (*see* ECF #4-1 at PageID 283) and expert report (*see id.* at PageID 321-25).

However, Dr. Pritchard's report and ultimate opinions go to whether Mr. Reed shot the victim in self-defense. Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. The Sixth Circuit has consistently determined that a claim of self-defense is a claim of legal innocence—that the conduct was legally justified—not factual innocence. *See, e.g., Bushner v. Bracy*, No. 17-3553, 2017 WL 9480312, at *3 (6th Cir. Dec. 11, 2017) (concluding a claim of self-defense "goes to [the petitioner's] legal, rather than factual, innocence"). Thus, to the extent Mr. Reed relies on Dr. Pritchard's testimony and report as new evidence to support his claim he is innocent because he shot the victim in self-defense, that argument only shows his legal innocence, not his factual innocence.

I thus recommend the District Court **DISMISS** Grounds One, Two, and Four as procedurally defaulted because Mr. Reed did not first raise them in the state courts. Mr. Reed's claim of self-defense goes to legal innocence, not actual innocence, and he does not otherwise support his arguments with new evidence.

**B.      Cognizablity**

The State also argues that Grounds One and Two are not cognizable because there is no freestanding habeas claim for actual innocence and that Ground Three is not cognizable because the evidentiary ruling was not a denial of fundamental fairness. (ECF #4 at PageID 95-102).

> **1.      Even if they are not procedurally defaulted, Grounds One, Two, and Four are not cognizable because the Supreme Court has not recognized a freestanding habeas claim for actual innocence nor recognized such a claim under the Fourteenth Amendment.**

In Grounds One, Two, and Four, Mr. Reed argues he is innocent of felonious assault, menacing by stalking, and the gun specification attached to his felonious-assault conviction respectively. (*See* ECF #1 at PageID 2-3). The State argues that freestanding habeas claims for actual innocence are not cognizable claims. (ECF #4 at PageID 95-96). Mr. Reed responds that conviction of an innocent defendant violates the due process clause of the Fourteenth Amendment. (*See* ECF #6 at PageID 1201, 1203-06).

Habeas relief is not available for a petitioner's freestanding claim of innocence absent a separate constitutional violation in the petitioner's proceeding. Habeas relief requires the state court proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). The Supreme Court has clearly established that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."). Based on this precedent, the Sixth Circuit has

19

repeatedly held that actual innocence is not cognizable as a freestanding habeas claim, particularly in the context of non-capital proceedings. *See, e.g., Hubbard*, 98 F.4th at 742 (holding the actual-innocence exception "is not a freestanding substantive claim for habeas relief"); *Sitto v. Lafler*, 279 F.App'x 381, 382 (6th Cir. 2008) ("[W]e continue to adhere to the rule that a free-standing innocence claim is not cognizable for habeas review."); *Wright v. Stegall*, 247 F.App'x 709, 711 (6th Cir. 2007) ("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that petitioner's claim is not entitled to relief under available Supreme Court precedent.").

Mr. Reed argues that the conviction of an innocent defendant violates the due process clause of the Fourteenth Amendment.[2] (*See* ECF #6 at PageID 1201, 1203-06). But just as the Supreme Court in *Herrera* refused to identify a freestanding claim for innocence, the *Herrera* Court also did not find a violation of the due process clause of the Fourteenth Amendment. *See Herrera*, 506 U.S. at 407-11. The Court explained that the Fourteenth Amendment is violated where the criminal process "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* at 407-08. And, after analyzing the history of granting a new trial to before the Revolutionary War, the Court concluded "we cannot say that

---

[2]     Mr. Reed also argues in Grounds One and Two that his rights under the Fourth Amendment were violated. (*See* ECF #1 at PageID 12-13; ECF #6 at PageID 1201, 1203-04). To the extent he did not mean to refer to the *Fifth* Amendment and its due process clause and he instead seeks habeas relief on a claim of illegal arrest, such a claim is not reviewable in habeas corpus "if he had a full and fair opportunity to raise the claim in state court and presentation of the claim was not thwarted by any failure of the state's corrective processes." *See Stone v. Powell*, 428 U.S. 465, 494-95 (1976). The state court docket shows at no point did Mr. Reed raise any such claim in the state court through pretrial motions to suppress or dismiss. (ECF #4-1 at PageID 404-12). The State cannot be said to have denied him a full and fair opportunity to raise his claim when he chose not to pursue it. Thus, to the extent he raises Fourth Amendment claims, they too are not cognizable.

Texas' refusal to entertain petitioner's newly discovered evidence eight years after his conviction transgresses a principle of fundamental fairness rooted in the traditions and conscience of our people." *Id.* at 411. Thus, the Supreme Court has also not clearly established a substantive claim for actual innocence based on the Fourteenth Amendment.

At various points in arguing his actual-innocence grounds, Mr. Reed gestures that his convictions lacked sufficient evidence. (*See* ECF #1 at PageID 13, 18 (citing *In re Winship*, 397 U.S. 358); ECF #6 at PageID 1204-05 (citing *Sera v. Norris*, 312 F.Supp.2d 1100 (E.D. Ark. Jan. 21, 2004)). While courts must "actively construe" *pro se* filings leniently to "encompass any allegation stating federal relief," *see Franklin*, 765 F.2d at 84-85, recharacterizing Ground One and Two to assert the cognizable claim that his convictions lacked sufficient evidence would not help Mr. Reed because any such claims would be procedurally defaulted.

As discussed above, if a petitioner did not first raise his federal habeas claim before the state courts and state law would no longer allow the petitioner to raise the claim in state court, the claim is procedurally defaulted. *Williams*, 460 F.3d at 806. In Ohio, claims that convictions lacked sufficient evidence can be raised on direct appeal and, if they are not, such claims cannot be raised later. *See State v. Szefcyk*, 671 N.E.2d 233, 235 (Ohio 1996). Mr. Reed did not challenge the sufficiency of the evidence against him on appeal, instead challenging only that the trial court improperly limited Dr. Pritchard's expert testimony. (ECF #4-1 at PageID 196, 302). Thus, even if the court actively construed Mr. Reed's petition to raise sufficiency-of-the-evidence claims, such claims would be procedurally defaulted.

Thus, if Grounds One, Two, and Four are not procedurally defaulted, I alternatively recommend the District Court **DISMISS** those claims as not cognizable either as freestanding

21

claims of actual innocence or as violations of the Fourteenth Amendment. To the extent these Grounds assert sufficiency-of-the-evidence claims, I recommend the District Court **DISMISS** such claims as procedurally defaulted.

> **2.      Ground Three is not cognizable because limiting Dr. Pritchard from opining on whether Mr. Reed met the requirements of self-defense was not a denial of fundamental fairness.**

In Ground Three, Mr. Reed argues the trial court wrongly excluded his expert witness from testifying about Mr. Reed's physical condition to show his belief he had to use deadly force to defend himself was objectively reasonable. (ECF #1 at PageID 2, 18-19). The State argues Ground Three is not cognizable because the evidentiary rulings did not rise to the level of a denial of fundamental fairness to be a cognizable habeas claim. (ECF #4 at PageID 96-102).

A state court's decision to admit or exclude evidence is usually a matter of state law. As discussed above, a state court's error in applying state law, including in admitting or excluding evidence, usually will not support habeas relief unless the error results in "a denial of fundamental fairness." *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983). "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey*, 500 F.3d at 521 (cleaned up). The habeas petitioner must show "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Id.*

In Ground Three, Mr. Reed argues the state courts' decision limiting expert testimony denied him the ability to present his self-defense theory and was an abuse of discretion. (*See* ECF #1 at PageID 19; ECF #6 at PageID 1207). The right to present witnesses to establish a defense is

22

"a fundamental element of due process of law." *Washington*, 388 U.S. at 19. And because expert testimony often forms a critical part of a defense, the Sixth Circuit recognized that "[i]n rare instances" exclusion of expert testimony might violate that right. *United States v. Smead*, 317 F.App'x 457, 462 (6th Cir. 2008). But the right to present a defense does not relieve a criminal defendant of the obligation to comply with the rules of evidence. *Clark v. Arizona*, 548 U.S. 735, 770 (2006). Rules that exclude evidence from criminal trials do not violate the right to present a defense unless they are "arbitrary or disproportionate to the purposes they are designed to serve." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). And "well-established rules of evidence [that] permit trial judges to exclude evidence" under certain circumstances are unlikely to violate a defendant's constitutional rights. *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006).

Ground Three concerns the admissibility of the report and ultimate opinions of Dr. Pritchard, the expert witness for the defense that was first subject to a pretrial motion:

> {¶6} The State filed a motion in limine to prohibit Dr. Pritchard from testifying at trial, to exclude Dr. Pritchard's expert report, and to require Appellant to provide additional evidence of a bona fide belief Appellant was entitled to use self-defense in this case. The trial court found Dr. Pritchard's report did not provide knowledge or expertise beyond that of a lay person as a juror, as a lay person is perfectly capable of comprehending older adults who fall or break bones fare far worse than younger adults, and the 78-year-old Appellant could easily sustain grave consequences from an altercation with the younger, heavier victim. The trial court granted the State's motion in part, allowing Dr. Pritchard testify as to Appellant's significant medical history, but precluding his testimony as to the potential consequences of an altercation between Appellant and the victim and its effect on Appellant's state of mind at the time of the shooting.

(ECF #4-1 at PageID 281-82; *see also id.* at PageID 160-66). After trial, Mr. Reed proffered what Dr. Pritchard would have testified to had it not been excluded:

> I would proffer that if I had been permitted to ask Dr. James Pritchard hypothetical questions, I would have asked him question number one: Given the information you have about Charlie Reed, I would ask you, if  hypothetically if he was yelled at or put

in a position of stress, within a reasonable degree of medical certainty, could that be fatal?

Dr. Pritchard would have answered yes.

I also wanted to ask Dr. Pritchard a hypothetical question that given the medical conditions of Charlie Reed, within a reasonable degree of medical certainty, could Charlie Reed suffer death as a result of being pushed down?

He would have answered yes.

And then finally I would have asked Dr. James Pritchard a hypothetical question that given Charlie Reed's conditions, within a reasonable degree of medical certainty, could he be killed by a blow to any part of his body or any part of his head?

Dr. Pritchard would have answered that question yes as well.

(ECF #4-1 at PageID 283; *see also* ECF #4-1 at PageID 1169-70).

The Fifth District discussed the limiting of Dr. Pritchard's testimony and Mr. Reed's self-defense theory as follows:

{¶11} Appellant claimed self-defense at trial. The elements of self-defense in the use of deadly force are: (1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant had a bona fide belief he was in imminent danger of death or great bodily harm and his only means of escape from such a danger was in the use of such force, and (3) the defendant did not violate any duty to retreat or avoid the danger.

{¶12} The second element of self-defense requires the evidence tends to show the accused had reasonable grounds to believe or an honest belief, even if mistaken, he or another was in imminent or immediate danger of death or great bodily harm. In *State v. Thomas,* the Ohio Supreme Court explained:

[T]he second element of self-defense is a combined subjective and objective test. As this court established in *State v. Sheets,* self-defense "is placed on the grounds of the bona fides of defendant's belief, and reasonableness therefor, and whether, under the circumstances, he exercised a careful and proper use of his own faculties." In *Koss,* we once again stated this test by approving similar jury instructions to those given in the case sub judice:

"In determining whether the Defendant had reasonable grounds for an honest belief that she was in imminent danger, you must put yourself in the position of the Defendant * * *. 'You must consider

24

the conduct of [the assailant] and determine if such acts and words caused the Defendant to *reasonably* and *honestly* believe that she was about to be killed or to receive great bodily harm.'" Thus, the jury first must consider the defendant's situation objectively, that is, whether, considering all of the defendant's particular characteristics, knowledge, or lack of knowledge, circumstances, history, and conditions at the time of the attack, she *reasonably* believed she was in imminent danger . . . Then, if the objective standard is met, the jury must determine if, subjectively, this particular defendant had an honest belief that she was in imminent danger.

{¶13} Appellant argues the trial court erred in excluding Dr. Pritchard's testimony concerning the medical outcome to Appellant of an altercation with a man the victim's age and size, as such evidence would have demonstrated Appellant reasonably believed his life was in danger when he shot the victim.

{¶14} "A trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence."

{¶15} Evid. R. 702(A) provides a witness may testify as an expert if the "witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons." The trial court found the testimony proffered in the instant case did not relate to matters beyond the knowledge or experience possessed by lay persons, and did not dispel a misconception common among lay persons.

{¶16} Appellant relies on the Ohio Supreme Court's opinion in *State v. Koss*, in support of his argument expert testimony was admissible on the issue of whether his belief he was in imminent danger from the victim was reasonable. In *Koss*, the court found testimony concerning battered women's syndrome was admissible on the issue of self-defense:

> Expert testimony regarding the battered woman syndrome can be admitted to help the jury not only to understand the battered woman syndrome but also to determine whether the defendant had reasonable grounds for an honest belief that she was in imminent danger when considering the issue of self-defense. "Expert testimony on the battered woman syndrome would help dispel the ordinary lay person's perception that a woman in a battering relationship is free to leave at any time. The expert evidence would counter any 'common sense' conclusions by the jury that if the beatings were really that bad the woman would have left her husband much earlier. Popular misconceptions about battered women would be put to rest, including the beliefs that the women are masochistic and enjoy the

25

beatings and that they intentionally provoke their husbands into fits of rage.

As the Supreme Court of New Jersey stated in *State v. Kelly*:

"['] Battered women include wives or women in any form of intimate relationships with men. Furthermore, in order to be classified as a battered woman, the couple must go through the battering cycle at least twice. Any woman may find herself in an abusive relationship with a man once. If it occurs a second time, and she remains in the situation, she is defined as a battered woman.[']"

" * * * [E]xpert testimony would be essential to rebut the general misconceptions regarding battered women.

"The difficulty with the expert's testimony is that it sounds as if an expert is giving knowledge to a jury about something the jury knows as well as anyone else, namely, the reasonableness of a person's fear of imminent serious danger. That is not at all, however, what this testimony is *directly* aimed at. It is aimed at an area where the purported common knowledge of the jury may be very much mistaken, an area where jurors' logic, drawn from their own experience, may lead to a wholly incorrect conclusion, an area where expert knowledge would enable the jurors to disregard their prior conclusions as being common myths rather than common knowledge."

{¶17} *Id.* at 216-17, 551 N.E.2d at 973-74.

{¶18} The Ohio Supreme Court later extended the holding in *Koss* to child abuse situations, finding testimony on the syndrome or psychological effects of abuse is essential to proving the elements of a self-defense claim, because nonconfrontational killings do not fit the general pattern of self-defense. *State v. Nemeth* . . . . Without expert testimony, a trier of fact may not be able to understand the defendant at the time of the killing could have had an honest belief he was in imminent danger of death or great bodily harm, and it is difficult for the average person to understand the degree of helplessness an abused child may feel. Thus, expert testimony would help dispel the ordinary lay person's perception that a [person] in a battering relationship is free to leave at any time.

{¶19} In both *Koss* and *Nemeth*, the expert testimony aided the jury in dispelling a common misconception a woman or child in an abusive relationship is free to leave any time. However, in the instant case, no such misconception exists. It is not a commonly held belief an older person with numerous health problems is no more susceptible to death from an altercation than a younger person in good health. Dr.

26

Pritchard testified at trial as to numerous health conditions from which Appellant suffered. Appellant testified because of his poor health, he feared for his life should he have another physical altercation with the victim. Further, the jury heard testimony from both the victim and Appellant, and was in a position to physically see the differences in age, size, and physical condition between the two men. As found by the trial court, expert testimony was not necessary for a lay person to understand the potential fragility of an older person in poor health who is involved in a verbal or physical altercation, and to evaluate the objective reasonableness of Appellant's belief he was in imminent danger of death or bodily harm if engaged in an altercation with the victim. We find the trial court did not err in finding Dr. Pritchard's opinion was not admissible under Evid. R. 702(A), as the proffered testimony was not beyond the knowledge or experience of a lay person and did not dispel any misconception common amongst lay persons.

(ECF #4-1 at PageID 285-90) (footnote and citations omitted).

The application of Ohio's evidence rules was not a denial of fundamental fairness. "In the realm of expert testimony, a criminal defendant is not constitutionally entitled to introduce an expert's conclusion that the criminal defendant acted in self-defense." *Tourlakis v. Morris*, 738 F.Supp. 1128, 1135 (S.D. Ohio 1990). As the Fifth Circuit observed,

[T]he issue of self-defense comprises many considerations that are manifestly outside the area of expertise of a psychiatrist or psychologist. If the experts were to testify, "in my opinion, [the defendant] was acting in self-defense when she killed [the victim]," they would be affirming not only that [the defendant] was likely to have had the requisite subjective state of mind, an opinion that their professional knowledge might well have qualified them to give, but also that [the defendant's] state of mind was reasonable, that she had taken adequate steps to avoid the danger, that it was not necessary for her to have retreated, et cetera.

*Phillips v. Wainwright*, 624 F.2d 585, 590 (5th Cir. 1980). Criminal defendants have often been limited in presenting expert witnesses that conclude other defenses are valid. *See, e.g., Buell v. Mitchell*, 274 F.3d 337, 359 (6th Cir. 2001) ("[A] habeas petitioner does not have a constitutional right to the presentation of expert testimony on the reliability of eyewitness identification."); *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012) (limitation of expert testimony on child witness's credibility not a denial of fundamental fairness). These cases reveal the balance struck is

27

that experts can discuss specialized facts relevant to a defense, but cannot opine on whether the defendant met the requirements of the defense.

The state court struck that balance. As the state court summarized, Ohio's self-defense law requires jurors put themselves "in the position of the Defendant . . . consider the conduct of [the assailant] and determine if such acts and words caused the Defendant to *reasonably* and *honestly* believe that she was about to be killed or to receive great bodily harm." (ECF #4-1 at PageID 286) (emphasis in original). Dr. Pritchard explained Mr. Reed's frail medical condition to the jury, including cancer and heart, lung, vascular, and digestive conditions. (ECF #4-2 at PageID 932-39). Mr. Reed was able to use this testimony during closing argument to support his self-defense theory by helping jurors understand his frail medical condition when they placed themselves in his position when determining it was reasonable for him to believe he faced death or great bodily harm. (ECF #4-2 at PageID 1139-40, 1141, 1149).

What the state court prohibited was Dr. Pritchard opining on whether it was reasonably certain Mr. Reed could die or suffer great bodily harm from being "yelled at or put in a position of stress," "being pushed down," or struck on "any part of his body or any part of his head." (*See* ECF #4-1 at PageID 283). These opinions essentially state "that [Mr. Reed's] state of mind was reasonable" because it was reasonably certain he faced death or serious bodily harm from being yelled at, pushed, or struck. *See Phillips*, 624 F.2d at 590. The state court's conclusion the jury did not need an expert to understand that an elderly man with Mr. Reed's medical conditions could be more likely to die from stress, falls, or impacts than an ordinary person did not result in the denial of fundamental fairness.

28

Mr. Reed's reliance on *State v. Koss*, 551 N.E.2d 970 (1990), also does not show how excluding Dr. Pritchard's ultimate conclusions blocked him from presenting his self-defense theory. In *Socha v. Wilson*, 477 F.Supp.2d 809 (N.D. Ohio 2007), the court found a habeas petitioner's right to present a self-defense theory was not denied when the trial court excluded an expert witness's testimony. In *Socha*, the petitioner claimed he killed the victim in self-defense after a break-in but the State argued he did not act in self-defense because he disposed of the body in a park and burned bloodstained evidence. *See id.* at 811-12. To counter this, the petitioner relied on *Koss* to have a psychologist testify that his "behavior following the physical confrontation" was because he "was overwhelmed by the reality of what had happened, that his reason and judgment were impaired by the alcohol and that his subsequent acts were irrational and symbolic as opposed to any meaningful attempts to cover his crime." *Id.* at 812. Just like here, the state court disagreed and concluded the jury was capable of deciding for itself whether the petitioner was in fear of death or great bodily harm at the time of the killing without expert testimony. *Id.* On habeas review, the federal court found no denial of due process in excluding the expert's testimony because "there was no 'syndrome' involved" or misconception to dispel; rather there was a personal history between the petitioner and the victim that "did not reveal that the [victim] had a reputation or character for being an aggressor." *Id.* at 813. The same is true here: there is no syndrome involved nor any popular misconception to dispel. The jury heard extensive testimony from Mr. Reed, the victim, and others detailing their years-long neighborhood feud and a jury does not require medical expertise to understand a neighbors' feud.

Mr. Reed also argues the trial court "told the jury not to consider what was being said" by Dr. Pritchard. Mr. Reed mischaracterizes the record as the transcript recounts Dr. Pritchard

testified on cross-examination that Mr. Reed could "die from bumps on their head in the car doors," the State interrupted with an objection, the court sustained it after holding a bench conference, and instructed the jury to "disregard the witness's last response." (ECF #4-2 at PageID 947-50). An instruction to disregard one response after a sustained objection is not an instruction to disregard a witness's whole testimony. Mr. Reed does not show the instruction was in error and, even if it was, a single erroneous instruction does not render an entire trial fundamentally unfair. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974).

Finally, Mr. Reed argues the trial court abused its discretion to limit his defense. (*See* ECF #1 at PageID 19, ECF #6 at PageID 1207). A state court's abuse of its discretion, without more, is not a constitutional violation. *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001). A federal habeas court has even less authority to second-guess a state court's discretion over matters of state law. *See Robinson v. Sheldon*, No. 1:18-CV-556, 2021 WL 423089, at *7 (N.D. Ohio Feb. 8, 2021). The state court's decision to limit Dr. Pritchard's testimony is a discretionary matter of state evidentiary law. Having already determined Mr. Reed was not deprived of his right to present a defense, there is no constitutional violation either.

I thus recommend the District Court **DISMISS** Ground Three as not cognizable.

## CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a COA and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). When a district court has determined a petitioner's constitutional claim to lack merit, the petitioner "must demonstrate that reasonable jurists would

find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not needed to grant a COA. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Reed has not made a substantial showing that he was denied any federal constitutional right. Jurists of reason would not find it debatable whether the grounds for relief are procedurally defaulted or are cognizable federal constitutional claims. I thus recommend the District Court **DENY** Mr. Reed a COA.

### CONCLUSION AND RECOMMENDATION

For these reasons, I recommend the District Court **DISMISS** Grounds One, Two, and Four as procedurally defaulted or, alternatively, as not cognizable; **DISMISS** Ground Three as not cognizable, and **DENY** the petition. I further recommend the District Court **DENY** Mr. Reed a COA on all grounds.

Dated: November 17, 2025

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

<u>Objections, Review, and Appeal</u>

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).